**SO ORDERED.**

**SIGNED this 06 day of February, 2012.**

_____
J. Rich Leonard
United States Bankruptcy Judge

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
NEW BERN DIVISION

IN RE:

NANCE PROPERTIES, INC.,                         CASE NO. 11-06197-8-JRL

    DEBTOR.                                              Chapter 11

## ORDER

This case is before the court on the application for compensation of Richard A. O'Bey and Eastern Carolina Properties, Inc. (collectively "ECP"). A hearing took place in Raleigh, North Carolina on January 25, 2012.

The debtor, Nance Properties, Inc., is a North Carolina corporation engaged in the business of owning and operating Valvoline stations and car wash facilities. The debtor filed for protection under chapter 11 of the Bankruptcy Code on August 12, 2011, and is currently operating as debtor in possession.

The debtor and ECP originally entered into an exclusive right to sell listing agreement ("listing agreement") on February 8, 2011. Under the terms of the listing agreement, ECP would provide brokering services for the sale of certain properties and additional marketing

services through Sunbelt Business Brokers of Coastal North Carolina, Inc.[1]  As compensation, the debtor agreed to pay ECP a commission equal to four percent (4%) of the gross sales price. The listing agreement explicates the events that would obligate the debtor to pay the commission:

> Client shall pay the commission upon delivery of the deed or other evidence of transfer of title or interest . . . . In the event of any breach by Client of any contract of purchase and sale, it is understood and agreed that the commission remains earned and payable upon notice given by Client to buyer of Client's intent not to proceed with such sale, notwithstanding the basis of such intent not to proceed.

Lastly, the listing agreement provides that in the event of the debtor's bankruptcy, the debtor "shall immediately notify [ECP] of the same and . . . shall promptly take all steps necessary to obtain court approval of [ECP]'s appointment to sell the [p]roperty[.]"  On June 6, 2011, ECP procured an agreement with H. Brooks Barwick, III ("Mr. Barwick") for the purchase and sale of debtor's businesses located in Swansboro, North Carolina, and Richlands, North Carolina[2] together with nearly all of the associated business assets ("the property") for the purchase price of $1,200,000.00 ("Barwick contract").

The debtor filed for protection under chapter 11 of the Bankruptcy Code on August 12, 2011.  On September 9, 2011, the debtor filed an application to employ and approve commissions to broker.  Reflecting the terms of the listing agreement, the application sought to employ ECP for the purpose of selling certain properties of the debtor and to "pay commissions

---

[1] Richard O'Bey formed ECP and Sunbelt Business Brokers of Coastal North Carolina, Inc. to aid owners in the listing and selling of businesses.  Sunbelt maintains a database of almost 2,000 potential business buyers in eastern North Carolina.

[2] Specifically, the Swansboro Property is comprised of 1.2 acres of land located at 1071 West Corbett Avenue, Swansboro, North Carolina, 28584.  The Richlands Property is comprised of 1.55 acres of land located at 100 Woodson Avenue, Richlands, North Carolina, 28540.

in the amount of four percent (4%) of the gross sales price of the property." Pursuant to the application, ECP would provide brokering services and continue with consummation of the sale.[3] The court approved the application on October 11, 2011.

On September 14, 2011, the debtor moved the court to approve the private sale of the property to Mr. Barwick free and clear of all liens, pursuant to 11 U.S.C. § 363(f). Following the objection of secured lender First-Citizens Bank & Trust Company ("First Citizens"), the court denied the motion on the grounds that the proposed sale did not satisfy the requirements of § 363(f). On December 8, 2011, ECP filed the present application for compensation, stating that "[b]ased on the contract sales price of $1.2 million and the 4% commission, [ECP] is owed a sales commission for procuring a ready, willing and able buyer in the sum of $48,000.00." The Bankruptcy Administrator ("BA") and the debtor filed objections on December 19, 2011 and December 22, 2011, respectively.

The debtor and the BA take the position that based on the facts and the language of the listing agreement, ECP is not entitled to receive commission from the attempted sale of the property, and therefore, the application for compensation must be denied. ECP argues that the right to receive the commission attached when it provided "a ready, willing, and able buyer at a price acceptable to the parties intending to engage in the transaction . . . and but for the actions of the debtor and the decision of this Court, ECP . . . provided all services as required of it in the [listing] agreement."[4]

Whether ECP is entitled to the requested commission turns entirely on the interpretation

---

[3] The application to employ specifically referenced the pending Barwick contract.

[4] At the hearing, Richard A. O'Bey testified on behalf of ECP in support of this position.

3

of the listing agreement, which specifies the events that obligate the debtor to pay. Obviously, because the sale was never consummated, there was no "delivery of the deed or other evidence of transfer of title or interest." However, the listing agreement also provides for the payment of commission upon the debtor's breach of a contract of purchase and sale. This must be read in conjunction with the bankruptcy provision that requires the debtor to "take all steps necessary to obtain court approval of [ECF]'s appointment to sell the property." In this case, the question becomes whether the debtor's inability to obtain court approval of the sale of the property constitutes a breach.

The court finds that it does not. After the petition was filed, the debtor obtained court approval for ECF to continue with the consummation of the sale. Furthermore, the debtor did everything in its power to obtain court approval of the sale of the property. The debtor filed a motion to sell the property free and clear of liens, properly noticed the motion, and put on thorough evidence at the hearing. However, in light of the objection of First Citizens, the court could not approve the sale pursuant to the Barwick contract under the controlling case law in this district.[5] This was in no way a breach by the debtor; it was simply the intervening application of law that applied to the transaction.

---

[5] See Richardson v. Pitt County (In re Stroud Wholesale, Inc.), 47 B.R. 999 (E.D.N.C. 1985), aff'd mem., 983 F.2d 1057 (4th Cir. 1986) (holding that a sale of property free and clear of liens pursuant to 11 U.S.C. § 363(f)(3) requires a sale price greater than the aggregate "face value" of the liens on the property).

4

Based on the foregoing, the court finds that ECF is not entitled to commission at this time,[6] and therefore, the application for compensation is **DENIED**.

**END OF DOCUMENT**

---

[6] The court acknowledges that if the debtor successfully sells the property in the future, ECF may be entitled to commission pursuant to the listing agreement. However, because the debtor has not yet assumed or rejected the listing agreement pursuant to 11 U.S.C. § 365(a), the court declines to speculate at this juncture.